CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
3/17/2022
JULIA C. DUDLEY, CLERK
BY: s/ A. Little
     DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| CROWN PACKAGING TECHNOLOGY, INC., <br> *Plaintiff*, <br><br> v. <br><br> BELVAC PRODUCTION MACHINERY, INC., <br> *Defendant.* | CASE NO. 6:18-cv-70 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

**MEMORANDUM OPINION ON PARTIES' *DAUBERT* MOTIONS**

This matter comes before the Court on the parties' various *Daubert* motions. The parties have filed three *Daubert* motions. Plaintiff (Crown) moves to exclude certain opinions of Defendant's (Belvac's) damages expert Christoper W. Bakewell, Dkt. 133. Belvac moves to exclude certain opinions of Crown's expert witness Robert Walsh relating to the asserted patents, Dkt. 113, and moves to exclude the damages opinion of Crown's expert witness Dana Trexler, Dkt. 115.

Neither party has raised a valid reason to exclude any of the other party's expert witnesses' opinions. Both parties have pled their disagreements with the other party's expert witnesses' opinions and cabined their disagreements as "reliability" issues, but all they have really done is raise issues ripe for cross-examination—not genuine "reliability" issues that would warrant exclusion. Thus, the Court will deny all three of the parties' *Daubert* motions.

**I. Background**

This case is a patent dispute relating to aluminum can manufacturing—specifically to the process of "can necking." Dkt. 1 (Complaint). Crown Packaging Technology, Inc., and

CarnaudMetalbox Engineering Ltd. (collectively, "Crown") filed a complaint against Belvac Production Machinery, Inc., ("Belvac") alleging patent infringement claims involving three different patents: Crown's U.S. Patent Nos. 9,308,570 (the "570 patent"), 9,968,982 (the "982 patent"), and 7,770,425 (the "425 patent"). Dkt. 1. Belvac filed a counterclaim against Crown alleging patent infringement relating to its U.S. Patent No. 7,530,445 (the "445 patent").

Both parties are in the business of making equipment used to produce two-piece aluminum beverage cans. Dkt. 1 at ¶ 13. They manufacture two of the most prominent machines for "necking" beverage cans. *Id.* at ¶¶ 13–19. Necking is the process by which can bodies are typically formed—by first drawing and ironing a cylindrical-shaped cup, and then reducing the diameter of the body. *Id.* at ¶ 14. For many years, up to the early 2000s, Belvac dominated the market for necking machines, but in 2004 Crown launched a new machine, the CMB3400, which surpassed Belvac's machines in efficiency. *Id.* at ¶¶ 18–19. Soon after Crown launched the CMB3400, the conflict between Crown and Belvac began, with each claiming that the other was infringing its patents. *Id.* at ¶¶ 20–23. There were initially two separate litigation disputes between the parties, one in the United States (in the U.S. District Court for the District of Nevada) and the other in the United Kingdom (in the High Court of Justice, Chancery Division). *Id.* at ¶ 25. Belvac filed both cases. *Id.* at ¶¶ 26–27. The U.S. litigation ended with the court dismissing Belvac's claims with prejudice, and the U.K. litigation ended with the court holding in Crown's favor that Crown had not infringed Belvac's patents. *Id.* at ¶ 27.

Then, Belvac developed a new necking machine, known as THE BELVAC. *Id.* at ¶ 31. THE BELVAC bears a similar set of features to the CMB3400, and Crown now claims in this case that Belvac infringed its patents in developing and marketing THE BELVAC. *Id.* at ¶¶ 31–32.

Both parties have solicited expert opinions in the present litigation, and each party challenges the admissibility of at least some of the other party's expert witnesses' opinions.

## II. Legal Standard

Under Federal Rule of Evidence 702, an expert witness may offer opinion testimony if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The party seeking to admit expert testimony bears the burden of demonstrating its admissibility by establishing "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Belville v. Ford Motor Co.*, 919 F.3d 224, 232 (4th Cir. 2019) (quoting *Daubert*, 509 U.S. at 597).

In assessing the admissibility of expert testimony, the court performs a critical "gatekeeping function," to prevent improper expert opinions from confusing or misleading the jury. *Nease v. Ford Motor Co.*, 848 F.3d 219, 231 (4th Cir. 2017) ("The main purpose of *Daubert* exclusion is to protect juries from being swayed by dubious scientific testimony.").

## III. Analysis

### A. Opinion of Crown's Expert Robert Walsh

Belvac moves to exclude certain opinions expressed by Crown's expert witness Robert Walsh. Dkt. 113. Crown has retained Walsh as its technical advisor on the issues of infringement and invalidity. Dkt. 114 at 1. Belvac moves to strike two opinions offered by Walsh: (1) his opinion on the meaning of the term "enhancing concentricity" and (2) his opinion on whether

3

Crown's patents meet the statutory "written description" requirement for a valid patent. *Id.* at 1–2.

### 1. Walsh's Opinion on "Enhancing Concentricity"

Belvac moves to strike Walsh's opinions concerning "enhancing concentricity" because, Belvac argues, they are inconsistent with the Court's order on claim construction. Dkt. 114 at 1. Belvac argues that "Mr. Walsh ignored the Court's claim construction and instead replaced the Court's claim construction with his own terminology." *Id.*

In the Court's previous Claim Construction Order, Dkt. 71, the Court construed the term "enhancing concentricity" to mean the process "whereby the throat portion inner surface is configured in view of the die inlet shape and the distance the can body moves relative to the die during necking to cause the can body to center itself in the die before the can body touches the die transition portion." Dkt. 71 at 22.

Belvac argues that Walsh's opinion should be struck because he applies an understanding of "enhancing concentricity" that is inconsistent with the Court's. Dkt. 114 at 5. His expert report states with respect to the term "enhancing concentricity" that a "much shorter, and accurate, phrase that tracks the Court's claim construction is 'full piloting,' as I have been using that term throughout this report." Ex. 3 to Dkt. 114 at 89. Belvac takes issue with Walsh's elaboration on the Court's claim construction order, arguing that his use of "full piloting" in place of or in addition to "enhancing concentricity" renders his opinion "wholly conclusory" and thus inadmissible. Dkt. 114 at 6. Crown, in turn, argues that Walsh's opinion is a mere elaboration on the Court's claim construction order, and is not inconsistent with it. Dkt. 152 at 4–5.

It is true that an expert witness contradicting a court's claim construction order may render the expert's opinion inadmissible. *See Arctic Cat Inc. v. Bombardier Recreational Prods.*

*Inc.*, Case No. 14-cv-62369, 2016 WL 9402395 at *6–7 (S.D. Fla. May 3, 2016) (holding an expert report inadmissible for directly contradicting the court's claim construction). But courts regularly hold admissible expert reports that merely elaborate on or apply in good faith the courts' claim constriction, especially where the expert applied the court's claim construction in good faith. *See, e.g., Innogenetics, N.V. v. Abbott Labs*, 512 F.3d 1363, 1378 (Fed. Cir. 2008) (reversing entry of JMOL because district court erred in excluding expert's testimony whose "failure to use the district court's exact words does not change the substance of his testimony or render it inapplicable"); *Not Dead Yet Mfg., Inc. v. Pride Solutions, LLC*, 222 F. Supp. 3d 357, 668 (N.D. Ill. 2016) (holding expert's application of the court's claim construction admissible where the expert's report was "a good-faith attempt to apply the court's construction of the claim terms, not an attempt to offer his own construction.").

      Here, Walsh's expert report merely elaborates on the court's claim construction order. It does not contradict it. Walsh's expert opinion on "full piloting" and the Court's claim construction order both contain the key requirement that the die throat be configured to allow the can body to center itself in the die (to be supported) before the can body touches the transition portion. *See* Dkt. 71 at 22; Ex. 3 to Dkt. 114 at 89–90. Even the portions of the expert report that Belvac argues contradict the Court's claim construction do not do so on their face. *See, e.g.,* Dkt. 114 at 5 ("[a] much shorter, and accurate, phrase *that tracks the Court's claim construction* is 'full piloting,' as I have been using that term throughout this report.") (emphasis added). At bottom, Walsh's report is a good faith attempt to apply the Court's claim construction, even if it adds additional terms or expands upon the Court's construction.

      Belvac's other argument that the Court should exclude Walsh's opinion with respect to "enhancing concentricity" is that Walsh failed to account for the die inlet shape and the "distance

the can body moves relative to the die during necking." Dkt. 114 at 7. Belvac argues that this renders his opinion unreliable within the meaning of Fed. R. Evid. 702. But Walsh does appear to have analyzed those factors in some detail. *See* Ex. 1 to Dkt. 152 at 89–91 (where Walsh, having considered the design of the dies and the stroke length of the machine, concludes that the requirement of enhancing concentricity was met).

Therefore, the Court will not exclude Walsh's opinion with respect to "enhancing concentricity."

## 2. Written Description Opinion

Belvac also moves that the Court hold inadmissible Walsh's opinion on whether Crown satisfied the "written description" requirement of a valid patent because Walsh "does not know what the specification or written description in a patent is." Dkt. 114.

Belvac's argument is meritless. Belvac argues that a brief exchange between Belvac's counsel and Walsh during Walsh's deposition evinces that he does not know what the written description requirement of a valid patent is. Dkt. 114 at 9. But in his expert report Walsh explains in some detail his understanding of the written description requirement, and in fact incorporates (and agrees with) Belvac's expert's description of the written description requirement. Ex. 2 to Dkt. 152 at 29–35. Belvac seems to want to use a "gotcha" moment from Walsh's deposition to argue that a significant portion of his expert report should be rendered inadmissible. At most, that is material for cross-examination; it does not render Walsh's report inadmissible.

## B. Opinion of Crown's Expert Dana Trexler

Belvac's next motion is to exclude the damages opinions of Crown's expert witness Dana Trexler, Dkt. 115. Trexler's expert report offers opinions on the extent of Crown's damages,

specifically on Crown's lost profits and reasonable royalty damages. Ex. A to Dkt. 116. Belvac argues that her opinion is inadmissible because it is unreliable, and argues that her opinion is unreliable because it is inconsistent with controlling case law on lost profits and royalty damages. *Id.* As with Belvac's motion to exclude Walsh's expert report, Belvac's motion to exclude Trexler's expert report is better material for cross-examination than for a *Daubert* motion. Belvac's arguments are just disagreements with Trexler's conclusions, not anything that would render Trexler's opinion inadmissible.

Trexler's report posits two theories for Crown's damages. First, Trexler asserts that Crown is entitled to lost profits. Ex. A to Dkt. 116 at ¶ 51. Belvac argues that Trexler's opinion with respect to lost damages is inadmissible because it is internally inconsistent and thus unreliable. Dkt. 116 at 5–6. Second, Trexler asserts that Crown is entitled to reasonable royalty damages. Ex. A to Dkt. 116 at ¶ 53. Belvac argues that Trexler's opinion on royalty damages is inadmissible because she miscalculates the amount of damages by using the wrong market value for Belvac's machine and by misidentifying the relevant patented components. Dkt. 116 at 6.

### 1. Lost Profits

Belvac's argument that Trexler's opinion on lost profits is inadmissible turns on Trexler's application of the test for lost profits set out in *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978). The Federal Circuit has adopted the four-factor *Panduit* test to determine when a party is entitled to recover lost profits. *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995). The Federal Circuit has held that "the availability of lost profits is a question of law for the court, not the jury." *Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1293 (Fed. Cir. 2007). If the judge determines that lost profits are available, then the jury determines the amount of those lost profits. *Id.* at 1293.

Belvac argues that Trexler's opinion is inconsistent with the possibility of Crown recovering lost profit damages because her opinion is irreconcilable with the third *Panduit* factor, that the party seeking to recover lost profits have the manufacturing capability to meet the lost demand during the claimed lost profits period. *Panduit*, 575 F.2d at 1156. Belvac points to Trexler's note that Crown "lacked . . . the floor space to set up the production line to meet the additional capacity that would have been needed to make the sales in the 'but for' world in 2018." Ex. F to Dkt. 116 at ¶ 90.

There are two problems with Belvac's argument. First, Belvac's argument is better suited to a partial summary judgment motion than to a *Daubert* motion, because Belvac is trying to use the fact that lost profits are not available as a matter of law to argue that Crown's expert report on the subject is inadmissible. Belvac has filed such a summary judgment motion on lost profits, Dkt. 117, which the Court will address in an accompanying opinion. A *Daubert* motion is not the appropriate vehicle to address the availability of lost profits. *See BorgWarner, Inc. v. Honeywell Int'l, Inc.*, 750 F. Supp. 2d 596, 612 (W.D.N.C. 2010) (denying motion to exclude plaintiff's damages expert from offering opinions on lost profit damages on the basis of failure to satisfy *Panduit* factors and holding that "[d]etermining at this juncture whether lost profits are available . . . would simply be premature. The parties are entitled to present evidence to the Court on this issue at trial. Once such evidence is presented, the Court will make a determination as a matter of law as to whether lost profit damages are available to BorgWarner and thus whether any evidence on the amount of those lost profits is even admissible."). Second, to the extent that Belvac contests the content of Trexler's expert report, it is material for cross-examination.

### 2. Royalty Damages

Belvac argues that Trexler's opinion with respect to reasonably royalty damages is

unreliable within the meaning of Fed. R. Evid. 702 because "she fails (in numerous ways) to properly apportion revenues and profits between patented and non-patented components, and because she improperly uses the entire market value of the accused product as her royalty base." Dkt. 116 at 11.

Much like with its argument on the lost profits point, Belvac's argument here is better suited to a motion for summary judgment and/or on cross-examination. Belvac cites the relevant case law on when and how a party can recover reasonable royalty damages, and then argues that Trexler's opinion is inconsistent with that case law. *Id.* at 11–21. That argument is much more properly suited to a motion for summary judgment on the availability of royalty damages, a motion that Belvac has in fact filed, Dkt. 117. The Court will address the issue in its opinion on that motion.

To the extent that Belvac argues that Trexler's opinion is actually unreliable, the argument is basically that Trexler's opinion is unreliable because Belvac could reasonably disagree with it. *See* Dkt. 116 at 11–18. But, again, that is material for cross-examination, not a basis to rule an expert's opinion inadmissible.

Also with respect to royalty damages, Belvac argues that Trexler impermissibly relies on the "entire market value rule" in rendering her opinion on reasonable royalty damages. The "entire market value rule" is invoked when the patentee seeks reasonable royalty damages based on the entire value of an allegedly infringing device; it applies only "when the patented feature is the sole driver of customer demand or substantially creates the value of the component parts." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 979 (Fed. Cir. 2018). The parties agree that the entire market value rule is not appropriate in this case. Dkt 116 at 18; Dkt. 157 at 23. But they disagree on whether Trexler relied on the entire market value rule

in rendering her opinion. Belvac argues that she did; Crown argues that she did not. It appears that she did not. Trexler's expert opinion carefully explains how she calculated royalty damages—by calculating the royalty damages generated by the single function of THE BELVAC (necking cans), not by referencing the entire market value. Ex. A to Dkt. 116 at ¶¶ 57–72; *see also* Dkt. 157 at 23–24.

Regardless, Belvac's cases on the royalty damages issue are on motions for summary judgment on the issue of entire market value, not on *Daubert* motions (*see* Dkt. 116 at 17–18), and Belvac has not explained why the Court should resolve the issue in a *Daubert* motion rather than a motion for summary judgment.

### C. Opinion of Belvac's Expert Christopher W. Bakewell

Crown moves that the Court preclude Belvac's damages expert, Christopher Bakewell, from offering two opinions: (1) his opinion as to a reasonable royalty based on a comparison of sales prices between certain Belvac 595 necking machines and certain accused THE BELVAC machines; and (2) his opinion that comparing Belvac's 595 necking machines to THE BELVAC supports a conclusion that the 595 necking machines are acceptable noninfringing alternatives. Dkt. 133.

Crown argues that Mr. Bakewell should be precluded "from offering an opinion as to a reasonable royalty that is based on a comparison of sales prices of certain Belvac 595 necking machines to sales prices of certain accused THE BELVAC machines." Dkt. 170 at 1. Specifically, Crown argues that Mr. Bakewell's reasonable royalty opinion based on his price and income comparison of 595 and TBN machines should be excluded because Bakewell (purportedly) has no factual support for the comparison, and because Belvac's technical expert

purportedly contradicts Mr. Bakewell's comparison. *Id*. Crown's argument rests on Fed. R. Evid. 702's reliability and sufficient facts requirements.

Belvac notes that Bakewell's expert report spends about 50 pages explaining his reasonable royalty opinion and provides the facts and data he relied on in developing that opinion. Dkt. 144 at 2–4.

Indeed, Mr. Bakewell's expert report does cite extensive data supporting his reasonable royalty opinion. *See* Ex. 1 to Dkt. 144. And the fact that Crown has an expert coming out the other way on the same point is—and the Court repeats itself—not a basis to exclude an expert witness. The fact that expert witnesses disagree on a point does not make one or both's opinions unreliable.

Therefore, the Court will not exclude Bakewell's opinion.

## IV. Conclusion

For the reasons discussed, the Court will deny both parties' *Daubert* motions, Dkt. 113, 115, and 133, in an accompanying order.

The Clerk of Court is directed to send a copy of this opinion to all counsel of record.

Entered this 17th day of March 2022.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE